STATE OF NEBRASKA, APPELLEE, V.
MARIO M. HERNANDEZ, JR., APPELLANT.

730 N.W.2d 96

Filed April 20, 2007.    No. S-06-745.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.
## NATURE OF CASE
The defendant, Mario M. Hernandez, Jr., was sentenced to probation, but the State moved to revoke his probation after he was arrested in Arizona. Hernandez entered a plea of guilty to the State's motion, but did not appear for sentencing because he was incarcerated in Arizona. The State did not ask for Hernandez to be returned to Nebraska before his Arizona sentence was complete, and Hernandez was eventually sentenced nearly a year after the term of his probation expired. The question presented in this appeal is whether Hernandez was denied his right to "prompt consideration" of the motion to revoke probation.[1]

---

[1] See Neb. Rev. Stat. § 29-2267 (Reissue 1995).

## BACKGROUND

In 2002, Hernandez was found guilty of possession of a controlled substance with intent to deliver and was sentenced by the district court on June 19, 2002, to a 3-year period of probation. The order of probation specified that Hernandez "[s]hall reside in Arizona" and "[s]hall refrain from unlawful or disorderly conduct or acts injurious to others." The order also required Hernandez to waive extradition to Nebraska during the term of probation.

On June 30, 2003, a notice of probation violation was filed in the district court, alleging that Hernandez had been arrested in Arizona on June 20 for two felony counts of trafficking stolen property. The case was referred to the county attorney, who filed a motion for revocation of probation on July 14, and a hearing was scheduled for August 6. That hearing is not reflected in our record, but on October 31, Hernandez changed his previous plea, admitted the allegation, and pleaded guilty to the probation violation. Sentencing was scheduled for January 21, 2004, but on December 23, 2003, Hernandez was sentenced to a 30-month prison term in Arizona. Hernandez failed to appear in Nebraska for sentencing, and a bench warrant was issued for his arrest.

On March 1, 2006, Hernandez filed a motion to dismiss the motion to revoke his probation, based on the State's alleged failure to timely prosecute the matter. The district court concluded that because Hernandez was in custody in another jurisdiction during his term of probation, he was not entitled to dismissal. On June 6, Hernandez was sentenced to a term of imprisonment of 4 to 8 years.

## ASSIGNMENTS OF ERROR

Hernandez assigns that the court erred in (1) overruling his motion to dismiss and (2) imposing an excessive sentence.

## STANDARD OF REVIEW

The revocation of probation is a matter entrusted to the discretion of the trial court.[2] Sentences within statutory limits will

---

[2] *State v. Finnegan*, 232 Neb. 75, 439 N.W.2d 496 (1989); *State v. Clark*, 8 Neb. App. 525, 598 N.W.2d 765 (1999).

be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion.[3]

## ANALYSIS

■ Section 29-2267 provides in part that "[w]henever a motion or information to revoke probation is filed, the probationer shall be entitled to a prompt consideration of such charge by the sentencing court." We have held that if a court is to revoke probation for a violation occurring within the probationary period, it is sufficient if procedure to that end was instituted within the probationary period or within a reasonable time thereafter.[4] Hernandez does not contend that the motion to revoke his probation was not timely filed. It was. Rather, Hernandez argues that the charge against him was not promptly considered in this case because the State failed to extradite him from Arizona for sentencing after he pled guilty to the probation violation. Hernandez concedes that the interstate Agreement on Detainers[5] is inapplicable to this situation.[6] Instead, he argues that he should have been extradited pursuant to the Uniform Criminal Extradition Act.[7] But assuming, without deciding, that Hernandez could have been extradited from Arizona for sentencing in Nebraska, we conclude, for the following reasons, that the delay in sentencing was nonetheless reasonable.

■ The statutory requirement of "prompt consideration" is similar to standards in other jurisdictions, based in statutory language or constitutional due process, which require proceedings to revoke probation to be undertaken with "reasonable promptness" or "due diligence," or with only a "reasonably necessary"

---

[3] *State v. Walker*, 272 Neb. 725, 724 N.W.2d 552 (2006).

[4] See, *State v. Windels*, 244 Neb. 30, 503 N.W.2d 834 (1993); *State v. Ladehoff*, 229 Neb. 111, 425 N.W.2d 352 (1988); *State v. White*, 193 Neb. 93, 225 N.W.2d 426 (1975); *State v. Holiday*, 182 Neb. 229, 153 N.W.2d 855 (1967); *Phoenix v. State*, 162 Neb. 669, 77 N.W.2d 237 (1956).

[5] Neb. Rev. Stat. § 29-759 et seq. (Reissue 1995).

[6] See *Carchman v. Nash*, 473 U.S. 716, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985).

[7] Neb. Rev. Stat. § 29-729 et seq. (Reissue 1995 & Cum. Supp. 2006).

delay.[8] Generally, in evaluating the reasonableness of a delay, courts should consider such factors as the length of the delay, the reasons for the delay, and the prejudice to the defendant resulting from the delay. We endorsed those factors in *State v. Windels.*[9]

But neither party in this case cites our decision in *State v. Washa,*[10] which, although decided before § 29-2267 was enacted, considered similar factors under comparable facts. In *Washa,* the defendant was convicted in Nebraska on January 27, 1961, of issuing a check on a bank in which he did not have an account. He was placed on probation for 2 years. He was given permission to leave the state and was convicted in Arizona on June 20 of passing a bogus check. He was sentenced to 5 years' imprisonment on that charge and then sentenced to life imprisonment in Arizona for first degree murder. The State of Nebraska filed a motion on July 24, asking for revocation of the order of probation, and a detainer was filed with Arizona authorities. But the defendant was not extradited to Nebraska until 1969, after he demanded immediate prosecution. The defendant was sentenced in Nebraska to 2 years' imprisonment.[11]

The defendant challenged the sentence on speedy trial grounds. We rejected his argument, concluding that he had not been prejudiced. We explained that the defendant

> was already confined in Arizona and was serving a life sentence from which he could not reasonably expect to have been released after the lapse of only 8 years. He had been convicted of several felonies in the past, as well as the two more recent convictions in Arizona . . . . He had already been convicted on the Nebraska check charge and no showing is made that the delay impaired any defense he had to the charge of violating the order of probation. In the present instance, the 2 year sentence imposed was not specifically

---

[8] See, e.g., *U.S. v. Garrett,* 253 F.3d 443 (9th Cir. 2001); *State v. Berry,* 287 Md. 491, 413 A.2d 557 (1980); *Commonwealth v. Sawicki,* 369 Mass. 377, 339 N.E.2d 740 (1975); *Decker v. State,* 209 N.W.2d 879 (N.D. 1973); *Com. v. Stancil,* 362 Pa. Super. 276, 524 A.2d 505 (1987).

[9] See, *Windels, supra* note 4; *Stancil, supra* note 8.

[10] *State v. Washa,* 185 Neb. 639, 177 N.W.2d 740 (1970).

[11] *Id.*

directed to run concurrently with the Arizona term. In fact, in sentencing defendant to a term in a Nebraska penal institution, it is difficult to see how it could be made concurrent with one in Arizona as the defendant cannot be in both places at once. Under such circumstances, the Nebraska term commences on termination of the Arizona term. . . . It is therefore apparent that defendant will continue to be subject to a detainer filed with the Arizona authorities and that any chance of having the Nebraska term run concurrently with the Arizona term is and has been nonexistent. . . . This record discloses that upon defendant's demand, proceedings to bring him to trial in [Nebraska] were instituted and trial had within a reasonable time.[12]

Other jurisdictions have applied similar considerations in determining whether statutory or constitutional requirements for prompt disposition of probation violations were satisfied. Those courts have almost uniformly concluded that a revocation hearing is reasonably prompt if it is held after a defendant's release from incarceration in another jurisdiction.[13]

For instance, federal courts have rejected claims that it was unreasonable for federal authorities to wait for the completion of a state sentence of incarceration to revoke a defendant's federal probation or supervised release.[14] As explained by the Ninth Circuit, "[a] contrary interpretation would be tantamount to holding that the federal government is statutorily required to writ a defendant out of state custody and bring him before the federal

---

[12] *Id.* at 641-42, 177 N.W.2d at 741-42.

[13] See, e.g., *Garrett, supra* note 8; *United States v. Blunt*, 680 F.2d 1216 (8th Cir. 1982); *United States v. Wickham*, 618 F.2d 1307 (9th Cir. 1979); *U.S. v. Cobbs*, 436 F. Supp. 2d 860 (E.D. Mich. 2006); *State v. Inscore*, 219 W. Va. 443, 634 S.E.2d 389 (2006); *Rease v. Commonwealth*, 227 Va. 289, 316 S.E.2d 148 (1984); *State v. Duncan*, 396 So. 2d 297 (La. 1981); *Stelljes v. State*, 72 S.W.3d 196 (Mo. App. 2002); *State v. Dunn*, 123 Or. App. 288, 859 P.2d 1169 (1993); *Edge v. State*, 63 Md. App. 676, 493 A.2d 437 (1985); *Bryant v. State*, 496 S.W.2d 565 (Tex. Crim. App. 1973). Cf. *Moody v. Daggett*, 429 U.S. 78, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976). But see *State v. Adler*, 189 Ariz. 280, 942 P.2d 439 (1997).

[14] See, e.g., *Garrett, supra* note 8; *Blunt, supra* note 13; *Wickham, supra* note 13; *Cobbs, supra* note 13.

district court for his revocation hearing."[15] The court observed that neither federal statutes nor any court had imposed such a duty, and the court was "mindful of the fact that requiring the federal government to writ a defendant out of state custody for a . . . revocation hearing could prove extremely burdensome."[16] As further explained by the Nevada Supreme Court, under circumstances similar to those of this case,

> [the defendant] willfully failed to appear for sentencing and engaged in other criminal acts, which resulted in his imprisonment in Arizona. He caused the delay of which he complains. It seems unfair to require the State to potentially incur two expenses: [the defendant's] transportation to Nevada for sentencing and then back again to Arizona for completion of his sentence of imprisonment, all in order to timely sentence him when he is the source of his own problems.[17]

In addition to finding that incarceration in another jurisdiction is a justified reason for delay, courts have generally found that delay due to incarceration is not prejudicial to a defendant.[18] The Ninth Circuit explained that

> the delay must have prejudicially affected the probationer's ability to contest revocation. Prejudice might result from delays causing probationers difficulty in contesting the alleged facts constituting a violation of their release conditions; hardship in finding and presenting favorable witnesses; or inability to produce evidence of mitigating circumstances which might result in continued probation despite the violation.[19]

But a probation revocation hearing usually involves a limited inquiry by the trial judge, focusing on whether the defendant has

---

[15] *Garrett, supra* note 8, 253 F.3d at 450. Cf. *Moody, supra* note 13.

[16] *Garrett, supra* note 8, 253 F.3d at 450. Accord *Stelljes, supra* note 13. See, also, *Wickham, supra* note 13; *Inscore, supra* note 13. But see *Adler, supra* note 13.

[17] *Prince v. State,* 118 Nev. 634, 640, 55 P.3d 947, 950 (2002).

[18] See, e.g., *Blunt, supra* note 13; *Wickham, supra* note 13; *Cobbs, supra* note 13; *Prince, supra* note 17; *Duncan, supra* note 13; *Dunn, supra* note 13; *Edge, supra* note 13.

[19] *Wickham, supra* note 13, 618 F.2d at 1310.

been convicted for another offense or failed to comply with a specific condition of probation.[20] Although some of the adverse consequences experienced by a defendant may be similar, the problems of proof, staleness of evidence, and loss of memory that may be encountered in a criminal prosecution are usually not significant concerns in a probation revocation proceeding.[21]

We agree with the foregoing authority, as suggested by our decision in *State v. Washa*,[22] and likewise hold that if a defendant is incarcerated in another jurisdiction and the State wishes to charge the defendant with violating probation, it provides the defendant with reasonably "prompt consideration" of the charge if the State invokes the detainer process and notifies the defendant of the pending revocation proceedings.[23] Absent unusual circumstances, the State is not required to extradite the defendant to revoke probation and sentence the defendant before the term of the defendant's foreign incarceration expires.[24]

Such unusual circumstances are not present here. The notice of Hernandez' probation violation was filed 10 days after he had been arrested in Arizona, and the State's motion to revoke probation was filed 14 days after that. A hearing was promptly scheduled, and Hernandez pled guilty to violating his probation. It is clear from the record that Hernandez did not lose any opportunity to contest the allegation against him. The delay before Hernandez was sentenced was lengthy but reasonable, considering that the basis for the delay was Hernandez' incarceration in Arizona.

Hernandez specifically argues that he was prejudiced because he lost the opportunity to serve his sentences of incarceration concurrently. As previously noted, we rejected a similar argument in *State v. Washa*.[25] And courts have consistently rejected

---

[20] *Edge, supra* note 13.

[21] *Id.* See, also, *Com. v. Dickens*, 327 Pa. Super. 147, 475 A.2d 141 (1984).

[22] *Washa, supra* note 10.

[23] See *Inscore, supra* note 13.

[24] See, *Garrett, supra* note 8; *Wickham, supra* note 13; *Inscore, supra* note 13; *Stelljes, supra* note 13.

[25] *Washa, supra* note 10.

arguments that a delay that may affect a defendant's ability to serve concurrent sentences is prejudicial within the meaning of any constitutional or statutory requirement for a prompt hearing.[26] A sentence imposed upon revocation of probation is simply a new sentence for the crime of which the defendant was originally convicted,[27] and a defendant has no more entitlement to serve sentences concurrently than would exist in any situation in which a defendant has been convicted of unrelated offenses. This is simply not the sort of prejudice that the requirement of "prompt consideration" was intended to preclude. And in any event, the sentencing court is free to consider the defendant's already-completed incarceration in determining how to dispose of the case,[28] providing the opportunity for the court to impose the functional equivalent of concurrent sentences when warranted.[29]

Hernandez also relies on our decision in *State v. Windels*,[30] in which we reversed the trial court's finding that the defendant had violated probation because the defendant was not notified of the warrant issued for his arrest, or the allegation that he had violated his probation, until nearly 7 months after they were made and after his term of probation expired. But *Windels* is clearly distinguishable from the present case. In *Windels*, we noted that "the State made no explanation concerning its delay in prosecuting the defendant for his probation violation."[31] We concluded that "[s]ince the State failed to diligently pursue the revocation of the defendant's probation and has failed to explain its delay

---

[26] See, *U.S. v. Sanchez*, 225 F.3d 172 (2d Cir. 2000); *U.S. v. Throneburg*, 87 F.3d 851 (6th Cir. 1996); *U.S. v. Tippens*, 39 F.3d 88 (5th Cir. 1994); *United States v. Sackinger*, 537 F. Supp. 1245 (W.D. N.Y. 1982), *affirmed* 704 F.2d 29 (2d Cir. 1983); *Duncan, supra* note 13; *Dunn, supra* note 13. Cf. *Moody, supra* note 13.

[27] See, Neb. Rev. Stat. § 29-2268 (Reissue 1995); *State v. Caniglia*, 272 Neb. 662, 724 N.W.2d 316 (2006); *State v. Wragge*, 246 Neb. 864, 524 N.W.2d 54 (1994).

[28] See § 29-2268.

[29] See, *Moody, supra* note 13; *Sanchez, supra* note 26; *Tippens, supra* note 26; *Dunn, supra* note 13.

[30] *Windels, supra* note 4.

[31] *Id.* at 34, 503 N.W.2d at 837.

in prosecuting the defendant on that charge, it was unreasonable to revoke his probation . . . ."[32] But as explained above, in this case, the basis for the State's delay in sentencing Hernandez was objectively reasonable and did not prejudice him. In short, we find Hernandez' first assignment of error to be without merit.

Hernandez also argues that the sentence imposed upon him, a term of imprisonment of 4 to 8 years, was excessive. Hernandez had been convicted of possession of a Schedule I controlled substance with intent to deliver, a Class III felony,[33] punishable by a minimum of 1 year's imprisonment and a maximum of 20 years' imprisonment, a $25,000 fine, or both.[34]

■ When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[35] Hernandez argues that he had no criminal record before the conviction underlying this case and that he was sorry for what he had done. But the sentence imposed was on the lower end of the statutory range, and Hernandez had been convicted of other crimes before his sentencing. Hernandez "was shown a great deal of leniency when he was placed on probation," and it was "evident that [he] was unable to rehabilitate himself on probation."[36] Under the circumstances, we find no abuse of discretion in the district court's sentence.

## CONCLUSION

Hernandez was not denied "prompt consideration" of his probation revocation, and the district court's sentence was not an abuse of discretion. The court's judgment is affirmed.

AFFIRMED.

---

[32] *Id.* at 35, 503 N.W.2d at 837.

[33] See Neb. Rev. Stat. § 28-416(2) (Cum. Supp 2002).

[34] Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2002).

[35] *State v. Marrs*, 272 Neb. 573, 723 N.W.2d 499 (2006).

[36] See *State v. Osterman*, 197 Neb. 727, 729, 250 N.W.2d 654, 655 (1977).