J-S32025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL L. LINDSTROM, | |
| Appellant | No. 1828 WDA 2014 |

Appeal from the Judgment of Sentence of October 24, 2014
In the Court of Common Pleas of Warren County
Criminal Division at No(s): CP-62-CR-0000085-2014

BEFORE:  SHOGAN, OLSON AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                          **FILED JULY 2, 2015**

Appellant, Michael L. Lindstrom, appeals from the judgment of sentence entered on October 24, 2014.  We affirm.

The factual background of this case is as follows.  On February 28, 2014, two-year-old D.D. ("Victim") was living with Appellant's girlfriend, N.J. ("Mother").  Appellant watched Victim while Mother went to the grocery store.  Upon returning home, Mother noticed new bruising on Victim's face and head.  Mother and Appellant eventually transported Victim to Warren General Hospital.  At the hospital, Mother asked Victim who had caused his injuries.  Victim twice responded that Appellant had caused the injuries.  Victim was later questioned by a forensics interviewer; however, no usable evidence was gathered from that interview.

The relevant procedural history of this case is as follows. Appellant was charged via criminal information with simple assault,[1] endangering the welfare of a child,[2] and harassment.[3] On September 30, 2014, Appellant filed a motion *in limine* seeking to preclude physician's assistant Matthew Minarik ("Minarik") from testifying regarding causation. On October 3, 2014, the Commonwealth filed a motion *in limine* pursuant to the Tender Years Hearsay Act ("TYHA"), 42 Pa.C.S.A. § 5985.1. On October 6, 2014, the trial court denied Appellant's motion *in limine*. After the requisite *in camera* hearing, on October 7, 2014, the trial court granted the Commonwealth's motion *in limine*. A one-day jury trial occurred on October 9, 2014. Appellant was found guilty of endangering the welfare of a child and harassment. On October 24, 2014, Appellant was sentenced to an aggregate term of one to three years' imprisonment. This timely appeal followed.[4]

Appellant raises two issues for our review:

---

[1] 18 Pa.C.S.A. § 2701(a)(1).

[2] 18 Pa.C.S.A. § 4304(a)(1).

[3] 18 Pa.C.S.A. § 2709(a)(1).

[4] On October 28, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On November 17, 2014, Appellant filed his concise statement. On December 29, 2014, the trial court issued its Rule 1925(a) opinion. Both issues raised on appeal were included in Appellant's concise statement.

1. Did the trial court err in permitting physician's assistant Matthew Minarik to testify at trial regarding medical causation, as he lacked the specialized scientific knowledge to render an expert opinion in that area?

2. Did the trial court err in admitting the hearsay statements of the alleged victim, as they were testimonial in nature and did not have adequate indicia of reliability?

Appellant's Brief at 7.

In his first issue, Appellant contends that the trial court erred by admitting Minarik as an expert witness. Minarik testified as to his opinion that the bruises on Victim were similar to marks that could have been created by fingers and that the bruises were caused by blunt trauma. "[Q]ualification of a witness as an expert rests within the sound discretion of the trial court, and the court's determination in this regard will not be disturbed absent an abuse of discretion." *Commonwealth v. Malseed*, 847 A.2d 112, 114 (Pa. Super. 2004), *appeal denied*, 862 A.2d 1254 (Pa. 2004) (citation omitted). "The standard for qualifying an expert witness is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible." *Commonwealth v. Kinard*, 95 A.3d 279, 288 (Pa. Super. 2014) (*en banc*) (citation omitted).

Appellant concedes that a non-doctor may be qualified as an expert witness regarding medical issues. *See Miller v. Brass Rail Tavern*, 664 A.2d 525, 528-529 (Pa. 1995). For example, lay medical examiners, Ph.D.'s in neuroscience, police officers, and nurses have all been qualified as experts

and permitted to testify regarding medical issues. *Freed v. Geisinger Med. Ctr.*, 5 A.3d 212, 220 (Pa. 2010); *McClain ex rel. Thomas v. Welker*, 761 A.2d 155, 158-159 (Pa. Super. 2000); *Miller*, 664 A.2d at 528-529; *Commonwealth v. Gonzalez*, 546 A.2d 26, 31 (Pa. 1988). Nonetheless, Appellant argues that Minarik should not have been admitted as an expert witness.

Minarik testified that he is a licensed physician's assistant in Ohio, Michigan, and Pennsylvania. N.T., 10/9/14, at 33. He attended Ohio State University and Cuyahoga Community College. *Id.* He then attended a master's program at Still University, an osteopathic medical school. *Id.* He engaged in clinical programs for a year in various areas, including emergency medicine and general practice. *Id.* He has practiced as a physician's assistant in Ohio, Michigan, the District of Columbia, and Pennsylvania. *Id.* at 33-34. He specializes in emergency care. *Id.* at 34. He completes 200 hours of continuing education every year. *Id.* at 35.

As is clear by this recitation of Minarik's qualifications, he possessed specialized knowledge outside of that held by the general public. He attended school for several years while learning about medicine. He served as a physician's assistant in four jurisdictions during which he treated many patients. He is subject to continuing education requirements and has spent, on average, four hours per week fulfilling those continuing education

- 4 -

requirements. A member of the general public would not have this specialized knowledge.[5]

Appellant focuses on the fact that Minarik has not published any journal articles nor has he previously been admitted as an expert witness. These factors, however, are not dispositive. "[A] witness qualified as an expert by knowledge, skill, experience, training[,] or education may testify thereto in the form of an opinion or otherwise." Pa.R.Evid. 702. In other words, there are several manners in which an expert witness can obtain his or her specialized knowledge. In this case, it is evident from Minarik's testimony that he obtained such specialized knowledge by education and experience. An expert need only receive his or her specialized knowledge from one of the above listed means – not all of them. The absence of published material in Minarik curriculum vitae goes to the weight of his testimony, not its admissibility.

Appellant cites a line of cases in which this Court held that a doctor in one specialized field was not qualified as an expert regarding another specialized field. Those cases, however, are distinguishable from the case at bar. Almost all of those cases arose in the medical malpractice area. In Pennsylvania, an expert witness in a medical malpractice case must be of

---

[5] Minarik certainly had more education than the police officer in *Gonzalez* who testified as to the effect that alcohol had on the body. In *Gonzalez*, our Supreme Court noted that the police officer had merely taken several classes related to pharmacology and toxicology of alcohol. *Gonzalez*, 546 A.2d at 32.

the same specialty as the defendant doctor. ***Anderson v. McAfoos***, 57 A.3d 1141, 1144 (Pa. 2012), *citing* 40 P.S. § 1303.512(c). There is no such requirement for testimony regarding medical causation in a criminal case.

Furthermore, Appellant's attempt to carve out medical causation as a specialty is unavailing. All forms of medicine deal with causation. For example, a podiatrist testifying regarding injuries to a foot does not need specialized knowledge in medical causation in order to be admitted as an expert to testify as to whether a certain incident was the medical cause of a foot injury. Similarly, a cardiologist does not need specialized training in medical causation to know whether a particular diet was the medical cause of a heart attack. Instead, medical causation is at the heart of any medical professional's knowledge in his or her field. In this case, Minarik had training in general medicine and emergency medicine. Specialized knowledge in these two areas was sufficient to qualify him as an expert regarding bruising. Accordingly, we conclude that the trial court did not abuse its discretion in admitting Minarik as an expert witness.

In his second issue on appeal, Appellant contends that the trial court erred by granting the Commonwealth's motion *in limine* and admitting Victim's statements under TYHA. "We will not reverse the trial court's decision to admit evidence pursuant to [TYHA] absent an abuse of discretion." ***Commonwealth v. Curley***, 910 A.2d 692, 697 (Pa. Super. 2006), *appeal denied*, 927 A.2d 622 (Pa. 2007) (citation omitted).

- 6 -

TYHA provides, in relevant part, that:

(a) General rule.--An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing [a series of offenses, *inter alia*, those at issue in this case,] not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

(a.1) Emotional distress.--In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

42 Pa.C.S.A. § 5985.1.

Appellant first contends, at least implicitly, that the trial court erred by concluding that Victim was unavailable. We disagree. At the *in camera* hearing, the trial court asked Mother what the effect on Victim would be if he were called to the witness stand. N.T., 10/7/14, at 54-55. Mother

responded, "It wouldn't be good." **Id.** at 55. She explained that "I think that he would cry or sit here and be completely silent." **Id.** From that testimony, the trial court reasonable concluded that Victim was unavailable due to emotional distress.

Appellant next contends that Victim's statements lacked sufficient indicia of reliability to be admitted under TYHA. It is undisputed that shortly after arriving at the hospital, Minarik prompted Mother to ask Victim who caused his injuries. **Id.** at 11, 33. At the *in camera* hearing, Minarik testified that Mother asked the question twice, seven minutes apart. **Id.** at 11. He further testified that, both times Mother asked the question, Victim responded that Appellant caused his injuries. **Id.** On the other hand, Mother testified that in response to these questions, Victim gave four different answers: Appellant, Victim's grandmother, Victim's cat, and Victim's sister. **Id.** at 30, 33. It is undisputed that after leaving the hospital, Victim was interviewed by a forensics interviewer and was unable to name the perpetrator of the offense. N.T., 10/9/14 at 109. At the conclusion of the *in camera* hearing, the trial court found Minarik's testimony to be credible and Mother's testimony not credible. Specifically, the trial court found that Mother's testimony was biased because she wished to continue her relationship with Appellant. **See** Trial Court Opinion, 12/29/14, at 3. Thus, the trial court found that Victim gave consistent answers to Mother's questions regarding Appellant's role in causing Victim's injuries.

We ascertain no abuse of discretion in the trial court's determinations. The trial court's credibility determinations regarding Mother and Minarik are supported by the record. As such, we may not overturn those determinations. *See Commonwealth v. Simpson*, 112 A.3d 1194, 1198 (Pa. 2015) (citation omitted) ("[W]e have emphasized that the lower tribunal's . . . credibility determinations which are supported by the record will not be disturbed on appeal."). Furthermore, there were significant indicia of reliability regarding Victim's statements in the hospital. For example, our Supreme Court has held that consistent repetition of a statement is an indicator of reliability. *Commonwealth v. Walter*, 93 A.3d 442, 456 (Pa. 2014), *citing Commonwealth v. Delbridge*, 855 A.2d 27, 47 (Pa. 2003). In this case, Victim gave the same answer twice, seven minutes apart. Another indicator of reliability is when the child's statements are given in response to open-ended questions. *Commonwealth v. Barnett*, 50 A.3d 176, 186 (Pa. Super. 2012), *appeal denied*, 63 A.3d 772 (Pa. 2013). In this case, Mother's questions were open-ended and not leading. She merely asked Victim who caused his injuries. Similarly, a good relationship between the child and the person that he reported the abuse to indicates the statement is reliable. *Commonwealth v. Hunzer*, 868 A.2d 498, 511 (Pa. Super. 2005), *appeal denied*, 880 A.2d 1237 (Pa. 2005). In this case, Mother testified that she had a good relationship with Victim. Finally, when a child has no incentive to lie, that is an indicator of reliability. *See*

*Commonwealth v. Lyons*, 833 A.2d 245, 255 (Pa. Super. 2003), *appeal denied*, 879 A.2d 782 (Pa. 2005). In this case, there is no evidence that Victim had an incentive to lie. Thus, there are several indicia that Victim's statements to Mother in the hospital were reliable. Accordingly, we conclude that the trial court correctly held that Victim's statements possessed the requisite indicia of reliability.

Appellant next argues that the trial court used the TYHA to admit evidence despite the fact that Victim would not be competent to testify at trial. Even assuming *arguendo* that Victim would not have been competent to testify at trial, that fact is irrelevant. Our Supreme Court has ruled that it is permissible to admit statements pursuant to TYHA even if the witness would not otherwise be competent to testify. *Walter*, 93 A.3d at 452.

Finally, Appellant argues that use of TYHA violated his right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution. The Supreme Court of the United States has held "that fidelity to the Confrontation Clause permit[s] admission of testimonial statements of witnesses absent from trial only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine[.]" *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2713 (2011) (internal quotation marks, alteration, ellipsis, and citation omitted). "A statement is testimonial if made for the purpose of establishing or proving some fact in a criminal proceeding." *Commonwealth v. Dyarman*, 73 A.3d 565, 573

n.11 (Pa. 2013) (internal quotation marks and citation omitted). The statements by Victim were non-testimonial. A two-year-old child would not realize his statements, to his mother, in a hospital emergency room, may later be used in a criminal prosecution. ***See Ohio v. Clark***, 2015 WL 2473372, *6-7 (U.S. June 18, 2015); ***Commonwealth v. Allshouse***, 36 A.3d 163, 181 (Pa. 2012). Therefore, Victim's statements were non-testimonial and do not implicate the Confrontation Clause. As such, the trial court did not abuse its discretion in admitting Victim's statements under TYHA.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/2015